

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| JONATHAN ARTNEIL LINCOLN, § § Plaintiff, § § vs. § § DEPUTY JOSEPH DRISCOLL, SERGEANT § KENNY BOYD, LIEUTENANT C. HYLER, § LIEUTENANT BRUCE A. TURNER, § DEPUTY THOMAS OSTEEN, DEPUTY § AGNIESZKA CZEKAJ-FERRELL, § SERGEANT BRANDON KNIGHT, DEPUTY § CHRIS CAREY, DEPUTY J.L. RUTLAND, § LIEUTENANT JASON TODD, and JANE § AND JOHN DOE 1–10, § § Defendants. § | Civil Action No. 1:23-cv-780-MGL |

**MEMORANDUM OPINION AND ORDER
ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DISMISSING WITH PREJUDICE PLAINTIFF'S CLAIMS
AGAINST DEFENDANTS JANE AND JOHN DOE 1–2,
DISMISSING WITHOUT PREJUDICE PLAINTIFF'S CLAIMS
AGAINST DEFENDANTS JANE AND JOHN DOE 3-10,
DENYING PLAINTIFF'S MOTION TO AMEND,
AND DEEMING AS MOOT PLAINTIFF'S MOTION TO REOPEN DISCOVERY.**

I.      INTRODUCTION

Plaintiff Jonathan Artneil Lincoln (Lincoln), who is representing himself, filed this civil

action against Defendants Deputy Joseph Driscoll (Driscoll), Sergeant Kenny Boyd, Lieutenant C.

Hyler, Lieutenant Bruce A. Turner, Deputy Thomas Osteen, Deputy Agnieszka Czekaj-Ferrell

(Czekaj-Ferrell), Sergeant Brandon Knight (Knight), Deputy Chris Carey, Deputy J.L. Rutland,

and Lieutenant Jason Todd (collectively, Defendants), in addition to Defendants Jane and John Doe 1–10 (Doe Defendants). Lincoln alleges violations of his constitutional rights under 42 U.S.C. § 1983, as well as state law claims arising from his purported unlawful arrest.

This matter is before the Court for review of the Report and Recommendation (Report) of the Magistrate Judge recommending the Court grant Defendants' motion for summary judgment and deny Lincoln's motion for summary judgment. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

## II.   FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge filed the Report on October 1, 2024. The Clerk of Court docketed Lincoln's objections on November 20, 2024, and Defendants filed their reply on December 13, 2024.

The Report sets forth a comprehensive recitation of the facts, which the Court finds unnecessary to repeat in full here. For context, however, the Court will briefly summarize the relevant factual and procedural history.

Late one evening, Knight, an officer with the Aiken County Sheriff's Office, observed a Dodge Durango driving with windows that appeared to fall below the state minimum for visible light transmission. He attempted to initiate a traffic stop, but the Durango led Knight, who was later joined by Sergeant Clarke Palmer (Palmer), on an extensive pursuit. When the Durango eventually pulled off into a plow field, Palmer ran to the vehicle, which was some distance away, and saw it was empty. Palmer noticed a pair of shoes on the ground and bare footprints along a nearby wood line.

An inventory search of the Durango revealed a shotgun, drugs and other paraphernalia, and prescription medicine bottles bearing Lincoln's name. Additionally, a registration check with the Department of Motor Vehicles identified Lincoln as the owner of the Durango. But, officers searching the area were unable to locate him.

Early the next morning, Colt Woody (Woody), who lived less than one mile from the search perimeter, awoke to an unknown man without shoes sitting on his back porch steps. When Woody called 911 to report a suspicious person, Czekaj-Ferrell and Driscoll were dispatched to the scene.

On the way, Czekaj-Ferrell spoke with Palmer. Palmer informed Czekaj-Ferrell an African American male named Jonathan Lincoln fled a vehicle chase, leaving his shoes behind. Palmer advised Czekaj-Ferrell Lincoln had a history of violence with police officers and could be armed, as a shotgun was found in his vehicle. Czekaj-Ferrell passed this information along to Driscoll.

Once on scene, Czekaj-Ferrell and Driscoll saw a shoeless, African American male, later identified as Lincoln, sitting on Woody's back porch steps. Because the man matched the physical description given by Palmer, Czekaj-Ferrell and Driscoll believed he could be the subject of the pursuit.

As Czekaj-Ferrell and Driscoll approached, Lincoln kept his head buried in the neck of his shirt and his arms tucked into the body of his shirt. The officers noticed Lincoln was slurring his words and appeared to be under the influence. Still unsure whether Lincoln was armed, though, Driscoll repeatedly ordered Lincoln to show his hands. Lincoln failed to do so, instead peeking a few of his fingertips up through the neck of the shirt.

After some back-and-forth, Driscoll attempted to grab Lincoln's hands through his shirt. Lincoln resisted, resulting in the officers wrestling Lincoln to the ground. Lincoln continued to

fight back, so Czekaj-Ferrell tased him. Eventually, the officers were able to handcuff Lincoln and confirm he was unarmed.

Around this time, Deputy Deas (Deas) and Deputy Givens (Givens) arrived on scene and tried to place Lincoln in Czekaj-Ferrell's patrol car. Lincoln refused to put his feet inside the patrol car, requiring Driscoll to also get involved. Once the three officers secured Lincoln in the patrol car, Czekaj-Ferrell was able to verify Lincoln's identity as the subject of the pursuit.

Knight and Czekaj-Ferrell subsequently obtained arrest warrants against Lincoln for, as is relevant here, resisting arrest, possessing with intent to distribute cocaine, possessing with intent to distribute heroin, and trafficking in methamphetamine. A grand jury later indicted Lincoln for those same charges.

Lincoln was ultimately convicted of the drug charges but acquitted of resisting arrest. He was sentenced to thirty years in prison.

Exactly three years after his arrest, Lincoln filed this action.

Lincoln first mentioned Deas and Givens in his motion for summary judgment. He later referenced "two John Doe Defendants whose identities have since been revealed as Deputy Givens and Deputy Deas." Lincoln's Supplement to Response in Opposition at 1. The Court will therefore refer to Doe Defendants 1–2 as Deas and Givens. Although Lincoln also brought this action against Doe Defendants 3–10, he has failed to allege any other unidentified officers were involved in the encounters set forth above. The Court will therefore dismiss Doe Defendants 3–10 without prejudice for failure to state a claim.

### III.    STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270 (1976).  The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

This Court, however, need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The Court reviews the Report only for clear error in the absence of specific objections.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record to accept the recommendation'").

### IV.    DISCUSSION AND ANALYSIS

Lincoln first objects to the Magistrate Judge's recitation of his claims.  Lincoln contends the Magistrate Judge erred in stating he asserts unlawful seizure and excessive force claims against all Defendants, as these claims are solely brought against Driscoll, Czekaj-Ferrell, Deas, and Givens.  As to the remaining Defendants, Lincoln posits he "asserts actions couched in bystander liability."  Lincoln's Objections at 2.

5

The Magistrate Judge entirely disposed of Lincoln's unlawful seizure and excessive force claims by determining his investigative detention and arrest were lawful and in further concluding all the officers failed to employ excessive force. Thus, bystander liability is inapplicable to the remaining Defendants. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002) (explaining bystander liability exists only where a fellow officer has violated the plaintiff's constitutional rights).

Lincoln's second through eighth objections relate to the Factual Background section of the Report.

As the Magistrate Judge explained, "[i]n considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party." Report at 11. Even still, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, the allegations underlying Lincoln's objections to the Report's Factual Background section are "blatantly contradicted by the record[.]" *Id.*

At trial, Knight testified he observed "[w]hat looked like footprints going to the wood line with the -- there was no shoes." Ex. A to Defendants' Motion for Summary Judgment at 50. Woody also testified Lincoln had "no shoes, socks[,]" *id.* at 84, and officers detained Lincoln after "he wouldn't subdue and put his hand behind his back." *Id.* at 86; *see id.* at 93, 96 (Czekaj-Ferrell's trial testimony reflecting the same).

Moreover, an affidavit from Czekaj-Ferrell indicates she and Driscoll "believed [Lincoln] could be the subject indicated by Sgt. Palmer[,]" given his physical match to Palmer's description.

6

Ex. B to Defendants' Motion for Summary Judgment ¶ 7. Czekaj-Ferrell also attests Driscoll "repeatedly asked . . . Lincoln to show [the officers] his hands to which . . . Lincoln refused and was verbally combative." *Id.* ¶ 9; *see* Ex. A to Defendants' Motion for Summary Judgment at 93, 96 (Czekaj-Ferrell's trial testimony corroborating the same). Czekaj-Ferrell further notes she verified Lincoln was the subject of the pursuit after he was secured in her patrol car. Ex. B to Defendants' Motion for Summary Judgment ¶ 16; Ex. A to Defendants' Motion for Summary Judgment at 98–99 (Czekaj-Ferrell's trial testimony reflecting the same). Although footage from Czekaj-Ferrell's body-worn camera lacks audio, the footage nevertheless visually corroborates the statements made by Czekaj-Ferrell at trial and in her affidavit.

Indictments submitted with Defendants' motion for summary judgment also demonstrate Lincoln was indicted, based upon his conduct on or about the date of the pursuit, for possessing with intent to distribute cocaine, possessing with intent to distribute heroin, and trafficking in methamphetamine. Ex. D to Defendants' Motion for Summary Judgment.

This evidence stands in stark contrast to the allegations contained in Lincoln's unverified complaint and briefing. Inasmuch as Lincoln quibbles with the Magistrate Judge's designation of his complaint as unverified, he neglects to offer any reason such designation was erroneous and instead summarily states the complaint is based on his personal knowledge. Personal knowledge alone, however, is insufficient to constitute verification. *See Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) ("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020))).

Therefore, the Court will overrule Lincoln's second through eighth objections.

Lincoln's ninth objection stems from the Magistrate Judge's conclusion his complaint failed to reference the event in which "Deas and Givens . . . assaulted [Lincoln] in a separate,

unlawful excessive force event that eventually Driscoll joined in, when the officers attempted to place [him] in the patrol car." Report at 13.

Lincoln maintains the complaint refers to "some sort of altercation occurring at the back seat of the police cruiser[,]" Lincoln's Objections at 8, and this reference was sufficient to notify Defendants of the nature of his allegations. Even assuming this was insufficient, however, Lincoln contends Defendants' use of abusive discovery practices deprived him of discovering the identity of Deas and Givens.

Having reviewed the complaint in full, the Court is unable to locate any reference to "some sort of altercation occurring at the back seat of the police cruiser." *Id.* The Court therefore agrees with the Magistrate Judge that considering these new allegations, which Lincoln first raised in his motion for summary judgment, would "effectively amend [Lincoln]'s complaint" and "prejudice Defendants." Report at 14; *see Faulconer v. Centra Health, Inc.*, 808 Fed. App'x 148, 154 (4th Cir. 2020) ("[A] plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment. But that does not mean that a plaintiff may plead one theory and one set of facts in his complaint, and then proceed to trial on an entirely different theory supported by entirely different facts. . . . Indeed, allowing such a constructive amendment at summary judgment may unfairly prejudice the defendant[] by depriving it of the notice it needs to conduct effective discovery." (citations omitted)). To the extent Lincoln relies on Defendants' purported abusive discovery practices, he nevertheless failed to assert a separate altercation by any officer, even one with an unknown identity, in his complaint. Accordingly, the Court will overrule this objection, too.

In Lincoln's tenth objection, he objects "to any interpretation of the nature of the seizure as anything other than that of a *Terry* stop and an arrest." Lincoln's Objections at 8 (emphasis

added).  Then, in his eleventh objection, he states he "does not concede that actions of the Defendants constitution a *Terry* stop, nor that the alleged *Terry* stop was justified in law." *Id.* at 9 (emphasis added).

These objections amount to general disagreements with the findings of the Magistrate Judge and merely repeat claims the Magistrate Judge properly considered, addressed, and rejected. Inasmuch as the Court agrees with the Magistrate Judge's detailed treatment of those claims in her well-written and comprehensive Report, it is unnecessary to repeat the discussion here. The Court will therefore also overrule Lincoln's these objections.

Lincoln's twelfth and thirteenth objections revolve around Czekaj-Ferrell's body-worn camera footage. Lincoln challenges the Magistrate Judge's statement "the undisputed evidence shows that [Lincoln] refused to show his hands when asked to by officers, except for briefly showing the tips of his fingers." Report at 18. He contends the lack of audio on the footage renders this issue disputed and thus warrants a factual determination by the jury. In other words, he insists the footage is "open to more than one interpretation." Lincoln's Objections at 10. The Court disagrees.

When Czekaj-Ferrell and Driscoll approached Lincoln, Lincoln kept his arms tucked into the body of his shirt. Although the footage is lacking audio, Czekaj-Ferrell attests Driscoll "repeatedly asked . . . Lincoln to show [the officers] his hands to which . . . Lincoln refused and was verbally combative." Ex. B to Defendants' Motion for Summary Judgment ¶ 9. She also testified to this effect at Lincoln's trial. Ex. A to Defendants' Motion for Summary Judgment at 93, 96. Moreover, the footage clearly demonstrates Lincoln never showed his hands and instead peeked only a few of his fingertips up through the neck of his shirt.

The Court therefore concludes "the undisputed evidence shows that [Lincoln] refused to show his hands when asked to by officers, except for briefly showing the tips of his fingers." Report at 18. Simply put, the footage is open to only one reasonable interpretation. For this reason, the Court will overrule Lincoln's twelfth and thirteenth objections.

Lincoln's fourteenth objection challenges the Magistrate Judge's determination "even if the officers lacked authority to execute a *Terry* stop, they would still be entitled to qualified immunity" because Lincoln "has not pointed to any case, nor is the court aware of any, in which a court ruled, on analogous facts, that the officers were not justified in executing a *Terry* stop." Report at 19 n.15. Because the Court agrees with the Magistrate Judge's conclusion the *Terry* stop was lawful, it is unnecessary for the Court to address qualified immunity. *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta."). Accordingly, the Court will overrule Lincoln's fourteenth objection.

Lincoln's fifteenth objection arises from his assertion the arrest warrants issued against him were facially invalid. But, Lincoln fails to articulate any argument in support of invalidity. The Court will therefore overrule this objection, as well. *See Orpiano*, 687 F.2d at 47 (explaining it is unnecessary for the Court to conduct a de novo review where "a party makes general and conclusory objections that do not direct the [C]ourt to a specific error in the [Magistrate Judge's] proposed findings and recommendations").

Relatedly, Lincoln's sixteenth objection challenges any reliance by the Magistrate Judge on his indictment for resisting arrest because "the record is replete with intentional fabrications, attempts to suppress evidence, and utter falsehoods . . . ." Lincoln's Objections at 11. As the Magistrate Judge explained, however, "the record does not indicate that [Czekaj-]Ferrell provided

10

materially false statements or material omissions in obtaining the [resisting arrest] warrant[] or to a grand jury sufficient to defeat a finding of probable cause." Report at 23. Nor does the record "indicate [Czekaj-]Ferrell had obvious reasons to doubt the accuracy of the information she reported or her disbelief that she had probable cause to arrest [Lincoln]." *Id.* The Court will thus also overrule this objection.

Finally, in Lincoln's seventeenth objection, he ambiguously objects to the Magistrate Judge's "finding on page 25" of the Report, calling it a "gross mischaracterization." Lincoln's Objections at 12. He fails, however, to specify the finding to which he is objecting and merely restates the arguments refuted by the Court above. The Court will therefore overrule this objection, too.

*****

Additionally, Lincoln moves to amend his complaint "based upon the fact that the identity and actions of certain named and unnamed Defendants become known to [him] only after discovery was compelled on a motion for reconsideration of [his] motion to compel discovery." Lincoln's Motion at 1–2. But, he fails to "assert[] a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in [his complaint.]" Fed. R. Civ. P. 15(c)(1)(B) & (C). And, both the Magistrate Judge and this Court have rejected any claim the actions of the officers involved in Lincoln's detention and arrest constitute violations of his constitutional rights. Accordingly, the Court will deny Lincoln's motion to amend as futile.

## V.     CONCLUSION

After a thorough review of the Report in this case under the standard set forth above, the Court overrules Lincoln's objections, adopts the Report, and incorporates it herein. Therefore, it

11

is the judgment of the Court Defendants' motion for summary judgment is **GRANTED**, and Lincoln's motion for summary judgment and motion to amend are **DENIED**.  Moreover, Lincoln's claims against Doe Defendants 1–2 are **DISMISSED WITH PREJUDICE**, and his claims against Doe Defendants 3–10 are **DISMISSED WITHOUT PREJUDICE**.

Because the Court has granted Defendants' motion for summary judgment and dismissed Doe Defendants, Lincoln's motion to reopen discovery is necessarily **DEEMED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 19th day of March 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this Order within thirty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.